IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| PRIMARY CHILDREN'S MEDICAL CENTER FOUNDATION and INTERMOUNTAIN HEALTH CARE, INC., dba PRIMARY CHILDREN'S MEDICAL CENTER, <br><br> Plaintiffs, <br><br> vs. <br><br> SCENTSY, INC., <br><br> Defendant. | ORDER AND <br><br> MEMORANDUM DECISION <br><br><br> Case No. 2:11-cv-1141-TC |

Plaintiff Primary Children's Medical Center Foundation (Primary Children's) has filed

for a preliminary injunction (Dkt. No. 6) against Defendant Scentsy, Inc. (Scentsy) for Scentsy's

allegedly infringing use of the term "Festival of Trees."  Scentsy has opposed the injunction and

has also filed a motion for summary judgment (Dkt. No. 51), arguing that the term "Festival of

Trees" is generic and cannot be protected under trademark law.  For the reasons stated below,

both Plaintiff's motion for a preliminary injunction and Defendant's motion for summary

judgment are DENIED.

BACKGROUND

Primary Children's uses the term "Festival of Trees" to denote a fundraising program that

raises money for children treated at Primary Children's Medical Center.  (Goodrich Decl. ¶ 4,

Dkt. No. 74.)  The fundraiser centers on an annual event, now held at the South Towne Expo

Center in the Salt Lake City area, which occurs about a month before Christmas and features the sale of hundreds of decorated Christmas trees that have been donated by individuals, merchants, and private organizations.  (See, e.g., id. at Ex. B.)  The fundraiser also raises money through the sale of a number of goods (apparel, ornaments, cookbooks, etc.) that contain the "Festival of Trees" mark.  Primary Children's has operated the festival since 1971 and advertises the event extensively in Utah.  (Id. ¶¶ 4, 6.)  At least ninety-five percent of the money raised each year comes from Utah residents.  (Id. ¶ 16.)  Primary Children's maintains a registration for the "Festival of Trees" mark with the state of Utah, but has not registered the mark federally.  (Id. ¶ 5.)

Scentsy sells scented candles, tins, and other fragrance products in a worldwide market. (Ritter Aff. ¶¶ 2-3.)  In September 2011, Scentsy began selling a product labeled "Festival of Trees™."  (Id. ¶ 5.)  Primary Children's sent Scentsy a letter on November 23, 2011, stating its concerns about Scentsy's use of the "Festival of Trees" term, but the parties were unable to reach an agreement.  (See Mangelson Decl., Dkt. No. 31.)  As a result, Primary Children's filed this suit against Scentsy, alleging trademark infringement under section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) and various state law causes of action.

ANALYSIS

**Motion for Summary Judgment**

<u>Standard of Review</u>

The court grants summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The court "view[s] the evidence and make[s] all reasonable inferences in the light most favorable to the

2

nonmoving party."  N. Natural Gas Co. v. Nash Oil & Gas, Inc., 526 F.3d 626, 629 (10th Cir.

2008).

Unfair Competition Claim

Section 43(a) of the Lanham Act prohibits the use of false designations of origin and

protects against infringement "even if the mark has not been federally registered."  Donchez v.

Coors Brewing Co., 392 F.3d 1211, 1215 (10th Cir. 2004) (quoting U.S. Search, LLC v. U.S.

Search.com, Inc., 300 F.3d 517, 522 (4th Cir. 2002)).  To prevail in an action for unfair

competition under § 43(a), "a plaintiff must establish that (1) her mark is protectable, and (2) the

defendant's use of [an identical or similar] mark is likely to cause confusion among consumers."

Id. (quoting Packman v. Chicago Tribune Co., 267 F.3d 628, 638 (7th Cir. 2001)).  In this case,

the court holds that Primary Children's has presented sufficient evidence that a reasonable jury

could find in its favor on both of these elements.  As a result, the court denies Scentsy's motion

for summary judgment.

    1.  Protectability

Scentsy focuses its motion on the first of these two prongs.  Scentsy claims that the term

"Festival of Trees" is generic, and is therefore not entitled to protection.  To be protectable, "a

mark must be capable of distinguishing the products it marks from those of others."  Id. at 1216

(quoting Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc., 192 F.3d 337, 344 (2d Cir.

1999)).  "There are five different categories of terms with respect to the protection of a mark:

generic, descriptive, suggestive, arbitrary, and fanciful."  Id.  The five categories have been

described succinctly as follows:

A mark is generic if it is a common description of products and refers to the genus

of which the particular product is a species.  A mark is descriptive if it describes the product's features, qualities, or ingredients in ordinary language or describes the use to which the product is put.  A mark is suggestive it if merely suggests the features of the product, requiring the purchaser to use imagination, thought, and perception to reach a conclusion as to the nature of the goods.  An arbitrary mark applies a common word in an unfamiliar way.  A fanciful mark is not a real word at all, but is invented for its use as a mark.

Id.

A generic mark is a contradiction in terms.  The generic name of a product can never function as a trademark because the name of a product itself cannot serve to distinguish the goods or services of one seller from those of another.  See J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 12.1 (4th ed. 2011).  As a result, a generic term is ineligible for trademark protection.  On the other end of the continuum, terms that are suggestive, fanciful, or arbitrary are "inherently distinctive" and therefore protectable.  See Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992).  Lying in the middle of this spectrum are descriptive marks, which are only protectable if they have acquired secondary meaning:

Marks which are merely descriptive of a product are not inherently distinctive. When used to describe a product, they do not inherently identify a particular source, and hence cannot be protected.  However, descriptive marks may acquire the distinctiveness which will allow them to be protected under the [Lanham] Act . . . .  This acquired distinctiveness is generally called "secondary meaning."

Id. at 769.

The categorization of a mark is a factual question.  Donchez, 392 F.3d at 1216.  At this stage of the litigation, the court need not determine the precise designation of the mark.  But in order to survive Scentsy's motion for summary judgment, Primary Children's must demonstrate that a jury could find that its "Festival of Trees" mark is protectable.  And because Primary Children's never registered its mark with the United States Patent and Trademark Office, it

cannot rely on a presumption that its mark merits protection.  See id.  Instead, Primary Children's

bears the burden to show that a rational trier of fact could find that the term "Festival of Trees" is

not generic.  It must also establish that a jury could find that, if the term is merely descriptive, the

mark has acquired sufficient secondary meaning that it is worthy of protection.

Primary Children's has carried its burden for both of these questions.  On the basis of the

evidence that is now before the court, a jury could find that "Festival of Trees" is a non-generic

term that has acquired secondary meaning and is worthy of protection.

A.  Generic Terms

The court turns first to the question of whether "Festival of Trees" is a generic term for a

holiday fundraiser.  At some point in time, these words were not generic.  A holiday fundraiser is

certainly distinct from a celebration of woody perennials and there is nothing inherent in the

words "festival of trees" that suggests anything about charitable events.  And while Primary

Children's "Festival of Trees" may not be the first event to use this term (the organization

appears to have gotten the idea from an event in Hawaii, see Reply, Ex. 1, at 2, Dkt. No. 79-1),

there is no evidence that the term was commonly used before 1971.

But terms can become generic over time.  Common examples include the term "Aspirin,"

which was ruled generic by Judge Learned Hand, Bayer Co. v. United Drug Co., 272 F. 505

(D.N.Y. 1921), and "Thermos," which was the subject of extensive litigation, American Thermos

Products Co. v. Aladdin Industries, Inc., 207 F. Supp. 9 (D. Conn. 1962), aff'd, 321 F.2d 577 (2d

Cir. 1963).  In support of its motion for summary judgment, Scentsy provides evidence that more

than 300 organizations around the country hold a festival of trees and argues that such

widespread use has rendered the term generic.

The legal test for whether a term has become a generic name or a mark is called the "primary significance" test because of language in a Supreme Court case that held that, in order for a seller to prove that a challenged term is not generic, the seller must show that the "primary significance of the term in the minds of the consuming public is not the product but the producer."  Kellogg Co. v. Nat'l Biscuit Co., 305 U.S. 111, 118 (1938).  This test was codified by the 1984 amendments to the Lanham Act: "The primary significance of the registered mark to the relevant public . . . shall be the test for determining whether the registered mark has become the generic name of goods or services."  15 U.S.C. § 1064(3).

The relevant public in the "primary significance" test is composed of Utah consumers, which is the group among whom Primary Children's seeks to protect its mark.  This emphasis on Utah residents does not prohibit the court from considering the evidence that Scentsy has provided of how the term "Festival of Trees" is used nationally.  Many courts have weighed evidence from around the country to determine the primary significance of the challenged term to the relevant public.  See, e.g., Boston Duck Tours, LP v. Super Duck Tours, LLC, 231 F.3d 1, 19 (1st Cir. 2008); Mil-Mar Shoe Co. v. Shonac Corp., 75 F.3d 1153, 1159 (7th Cir. 1996); Hunt Masters, Inc. v. Landry's Seafood Rest., Inc., 240 F.3d 251, 254 n. 1 (4th Cir. 2001).[1]  But while national usage can be probative of what a Utah consumer would think, it is not dispositive.

A mark can be generic in one area and not in another.  For instance, the Ninth Circuit held that the district court should not consider evidence that the term "Yellow Cab" was generic

_____

[1]As discussed below, these cases are somewhat inapposite to Primary Children's claim because they involve direct competitors in the same line of business, not one business that may be trading on the goodwill of another organization.

6

in New York City when deciding whether that term was generic in Sacramento: "[W]e must reject the specific argument tendered by the defendant that the use of the term "yellow cab" in the New York City metropolitan area is dispositive in determining the distinctiveness of a mark used by a small business claiming territorial rights in Sacramento, California." Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc., 419 F.3d 925, 930 n. 4 (9th Cir. 2005).  Similarly, the United States District Court for the Eastern District of Michigan found that widespread use of the term "Guaranty" by financial institutions in other states did not mean that the term should not receive protection in Michigan:

> The fundamental problem with Guaranty's argument is that [the evidence of widespread use in other states] only suggests that actual third-party use has weakened the GUARANTY mark in states such as Louisiana, Texas, Florida, Oklahoma and California, where banks . . . are wont to refer to themselves by utilizing the term GUARANTY.  Since 1990, the GUARANTY mark has only been utilized in Michigan by Midwest Guaranty; as such, third-party use of the mark in distinct geographic regions of the country has not weakened the mark in southeast Michigan.

Midwest Guaranty Bank v. Guaranty Bank, 270 F. Supp. 2d 900, 914 (E.D. Mich. 2003).  See also Ameritech, Inc. v. American Info. Technologies Corp., 811 F.2d 960, 967 (6th Cir. 1987) ("A mark might be weak in the national market, but might still be strong in the senior user's geographical and product area and thus deserving of protection").  Even if "Festival of Trees" has become generic in certain parts of the country, the court must still determine the primary significance of the term to consumers in Utah.

When undertaking this analysis, the court considers a variety of factors, including (1) consumer surveys; (2) the use of the term in media publications; (3) the use of the term by competitors in the industry; (4) purchaser testimony concerning the term; and (5) the plaintiff's

use of the term.  Boston Duck Tours, 531 F.3d at 18.  The parties have provided evidence of three of these factors, and all of them support the inference that "Festival of Trees" is recognized as a non-generic mark in Utah.

First, Primary Children's includes in its opposition materials a survey of Utah residents in which 80.2 percent of respondents expressed the view that "Festival of Trees" is a brand of event in Utah and not a common or generic name.  (See Christensen Decl. 3, Dkt. 72.)  The survey method was based on the "Teflon format[2]," in which survey respondents are trained on the difference between a "brand name" and a "common name" and then asked to categorize several test items accordingly.  According to Dr. Glenn Christensen, 80.2 percent is a statistically significant number and supports the finding that the name "Festival of Trees" is viewed as a brand by Utah consumers.  Scentsy has not provided any evidence that the survey methodology utilized by Primary Children's is flawed.  And while the nature of response in any survey can be controlled by the way the question is framed, "a survey is preferable to attorneys, litigants and judges merely arguing and extrapolating from their own personal perceptions."  McCarthy, supra, § 12:17.

Scentsy does object to the survey on the grounds that consumer surveys are irrelevant if the term at issue was not coined by the party that is seeking trademark protection.  Scentsy relies on a Fourth Circuit case which rejected as "irrelevant" a registrant's survey of local consumers

---

[2]The survey is named after its first appearance in litigation, when it was used to demonstrate that "Teflon" was not a generic name.  In that survey, 68% of respondents considered "Teflon" to be a brand name, similar to the 76% of respondents who considered "Coke" to be a brand.  See E.I. du Pont de Nemours & Co. v. Yoshida Int'l, Inc., 393 F. Supp. 502 (E.D.N.Y. 1975).

because the registrant had not first coined the term "crab house."  Hunt Master, 240 F.3d at 254-

55.  See also Schwan's IP, LLC v. Kraft Pizza Co., 460 F.3d 971, 976 (8th Cir. 2006) (holding

that survey evidence concerning the term "Brick Oven" was irrelevant because the designation

was "commonly used" before the use by either party).  But the court agrees with authorities that

challenge this position and finds that consumer surveys can play an important role in determining

primary significance even if the term at issue was not first coined by the party seeking to protect

its mark.  See McCarthy, supra, § 12:17:50 (criticizing the holding in the cases cited above and

noting that "[t]o state that consumer perception is irrelevant for a non-coined "generic" word . . .

is to assume the result before making an analysis of that which is to be decided").  No matter

how a term received its genesis, the "primary significance" test is still of paramount importance

to determine if the term is generic, and a consumer survey is a useful indicator of what that

significance is to the relevant public.

      Second, the court examines the use of the term "Festival of Trees" in media publications.

Primary Children's has provided numerous examples of media stories in Utah in which the words

"Festival of Trees" require no additional explanation.  See, e.g., Jerry Johnston, Festival of Trees

Makes Holidays a Little Warmer, Deseret News, Nov. 26, 1993, Dkt. No. 71-13 ("In all, the

Festival of Trees has become a major part of local lore"); Ivan M. Lincoln, Bestor Bringing His

Yule Show to S.L. – With a Few Surprises, Deseret News, Dec. 4, 1998, Dkt. No. 71-10

("Christmas is a time for traditions – Scrooge at the Hale Centre Theater . . . the Festival of Trees

at the Salt Palace"); Barbara M. Bannon, Desert Star's 'Bi Polar Express' Doesn't Quite Deliver

the Comic Goods, Salt Lake Tribune, Dec. 9, 2005, Dkt. No. 71-6 ("[T]he show's best line:

When someone asks if Miller will purchase all the trees at the Festival of Trees, Uncle Roy

snaps, 'Why not?  He buys every other 7-foot piece of crap'")).  These examples from local media

demonstrate that, for many of the readers of these publications, the term "Festival of Trees" is

associated with a specific event.

Scentsy provides its own wealth of media examples in which the term "Festival of Trees"

is used in a much more general sense in other areas around the country.  See, e.g., Heather

McPherson, A Boy's Creations Trump All Finery, Orlando Sentinel, Dec. 20, 2006, Dkt. No. 53-

3 ("Through the years, I've strolled through many designer show houses, multiple festivals of

trees and theme-park holiday extravaganzas"); Michael Eck, The Season Is Peppered with Usual

Suspects, Times Union, Nov. 21, 2004, Dkt. No. 53-2 ("Once the Thanksgiving turkey is packed

away (in bellies and refrigerators) look for the usual seasonal stuff like live Nativities, Victorian

strolls, festivals of trees, gingerbread displays . . ."); Steve Penhollow, Have a Holly Trolley

Christmas, Fort Wayne Journal Gazette, Nov. 19, 2006, Dkt. No. 53-2 ("You've got your

festivals of trees, wreaths, gingerbread and poinsettias").  While these examples do call into

doubt Primary Children's assertion that a Utah resident will understand the primary significance

of the term "Festival of Trees" to mean something specific, the examples of usage in local media

that Primary Children's has submitted counterbalance Scentsy's evidence and are sufficient to

allow a reasonable jury to find that the term is not generic.

Finally, the court looks to the plaintiff's own use of the term as evidence of its status as a

trademark.  Scentsy argues that language on Primary Children's website is evidence of how the

term is used generically.  Specifically, the website states that "[o]ver the years, Festival of Trees

has been copied many times throughout the United States and Canada.  However, the Salt Lake

City Festival of Trees remains the 'granddaddy' of them all."  But a single instance of describing

the location of the fundraiser does not necessarily render the "Festival of Trees" term generic. And Primary Children's use of the term on its website is consistent with its argument that the term is distinct in Utah.  Primary Children's merely asserts that, while the event may have been copied in other geographic locations, the "Festival of Trees" in Salt Lake City retains its strong local presence.

Given all of these facts, a reasonable jury could find that "Festival of Trees" is not a generic term.  Primary Children's has provided sufficient evidence that the primary significance of the term to the relevant public, Utah residents, is that "Festival of Trees" denotes a specific event that is readily associated with Primary Children's.

B. Secondary meaning

Even if a jury were to find that "Festival of Trees" is not a generic term, it must also find that the term is either suggestive, arbitrary, or fanciful, or that the term is descriptive and has acquired secondary meaning.  Because Primary Children's only need demonstrate that a reasonable trier of fact could determine that "Festival of Trees" has acquired secondary meaning to survive Scentsy's motion for summary judgment, the court does not address whether the mark could be classified as suggestive, arbitrary, or fanciful.

"Secondary meaning exists only if most consumers have come to think of the word as not descriptive at all but as the name of the product."  Donchez, 392 F.3d at 1218 (quoting Packman v. Chicago Tribune Co., 267 F.3d 628, 639 (7th Cir. 2001)).  Much of the evidence that Primary Children's has adduced to show that "Festival of Trees" is not a generic term also demonstrates that the term has acquired secondary meaning.  In addition, a plaintiff may "establish secondary meaning for a name by presenting circumstantial evidence regarding: (1) the length and manner

11

of its use, (2) the nature and extent of advertising and promotion of the mark and (3) the efforts

made in the direction of promoting a conscious connection, in the public's mind, between the

name or mark and a particular product or venture."  Id. (quoting Flynn v. AK Peters, Ltd., 377

F.3d 13, 20 (1st Cir. 2004)).

      A jury could hold that all of these factors weigh in favor of finding that the "Festival of

Trees" mark has acquired secondary meaning.  The event has occurred in Utah since 1971, it has

been heavily advertised for many years, and it receives coverage from most well-known Utah

news and media organizations.  (See Goodrich Decl. ¶¶ 4, 7-8, Dkt. No. 74.)  In addition,

Primary Children's has successfully protected the term "Festival of Trees" from use by other

parties in Utah, including The Shops at Riverwoods in Provo; Symphony of the Canyons/Kanab

High School; Hurricane's Chamber of Commerce; Bonnie Shamo in Delta; and Cedar City

Heritage Center.  (Id. ¶¶ 19-22.)  Scentsy has cited three examples of the use of the term

"Festival of Trees" in Utah to describe something other than the Salt Lake City event.  (Gigger

Decl. Ex. V, Dkt. No. 71.)  But two of those events use terms that are similar, but not identical,

to the words "Festival of Trees" (one event is labeled "Jubilee of Trees" and the other is labeled

the "Trees of Hope Festival").  (Id.)  And the other event is merely a reference found in a post to

a Utah State University student calendar.  (Id.)

      The fact that Primary Children's has maintained a Utah registration of the "Festival of

Trees" mark also supports the inference that the mark is protectable.  Neither party has directed

the court to case law holding that, unlike a federally registered mark, a mark registered in the

state is entitled to a presumption of protectability.  But the Utah Trademark Act "shall be

interpreted to provide for the registration and protection of trademarks and service marks in a

manner substantially consistent with the federal system of trademark registration and protection under the Trademark Act of 1946, 15 U.S.C. Sec. 1015, et seq."  Utah Code Ann. § 70-3a-102(2).  And there would be no reason to grant Primary Children's a state registration unless a reasonable person could find that the mark was worthy of protection.

Given the Utah registration and the efforts by Primary Children's to promote and protect a conscious connection between the "Festival of Trees" term and the Salt Lake City event, a reasonable jury could determine that, if the mark is merely descriptive, it has acquired sufficient secondary meaning that it is worthy of protection.

2.  Likelihood of Confusion

Even if "Festival of Trees" is a protectable mark, Primary Children's cannot prevail on a claim for unfair competition or trademark infringement under Section 43(a) of the Lanham Act unless it can establish that Scentsy's use of the mark is likely to cause confusion among consumers.  While Scentsy's motion hinges on the argument that "Festival of Trees" is not a protectable mark and does not address this second prong, the parties brought up the likelihood of confusion analysis at the hearing held on June 5, 2012.  This analysis is also central to the likelihood of success evaluation in Primary Children's motion for a preliminary injunction.  In the interest of completeness, the court first undertakes this analysis in the context of Scentsy's motion for summary judgment and holds that a reasonable jury could find that Scentsy's use of the mark is likely to cause confusion.

The Tenth Circuit has identified six factors that aid in determining whether a likelihood of confusion exists between two marks:

(a)     the degree of similarity between the marks;

13

(b)      the intent of the alleged infringer;

(c)      evidence of actual confusion;

(d)      the relation in use and the manner of marketing between the goods or
services marketed by the competing parties;

(e)      the degree of care likely to be exercised by purchasers; and

(f)      the strength or weakness of the marks.

King of the Mountain Sports, Inc. v. Chrysler Corp., 185 F.3d 1084, 1089-90 (10th Cir. 1999).

"This list is not exhaustive.  All of the factors are interrelated, and no one factor is dispositve."

Id. at 1090 (citations omitted).

The first factor, the degree of similarity between the marks, provides support for a

likelihood of confusion because Scentsy has used the exact mark, "Festival of Trees," that has

been registered by Primary Children's.  But the court tests the degree of similarity between marks

on three levels: sight, sound, and meaning.  See, e.g., First Sav. Bank, F.S.B. v. First Bank Sys.,

Inc., 101 F.3d 645, 653 (10th Cir. 1996).  While the sound of Scentsy's mark is exactly similar to

that of Primary Children's mark, there is no evidence that the script and style of the visual

depiction of the mark are similar.  As a result, this factor provides only weak support.

The second factor is indeterminate at this stage of the litigation, because it is unclear what

Scentsy's intent was when it developed its "Festival of Trees" product line.  There is no direct

evidence that Scentsy intended to trade on the goodwill created by Primary Children's event.

Primary Children's has provided some evidence of the third factor—actual confusion—,

but this evidence is not strong.  The evidence consists of a declaration by Marie Partridge, a co-

chair of the executive board for the "Festival of Trees" program, who recounts her confusion

when she saw the product labeled "Festival of Trees" in the Scentsy catalog and bought the

product because she believed the mark referred to the Primary Children's event.  (Partridge Decl.

¶¶ 1, 4-6, Dkt. No. 76.)  While Scentsy complains that such evidence should be viewed with skepticism as it does not necessarily reflect the confusion of an ordinary consumer who is unaffiliated with the charity, Primary Children's does not need to present incontestable evidence of actual confusion.  Scentsy's product has only been on the market for a short period of time, and courts have held that plaintiffs should be able to protect their trademark rights before they are diluted or otherwise harmed.  See, e.g., New York City Triathlon, 704 F. Supp. 2d at 318 ("It would be unfair to penalize plaintiff for acting to protect [its] trademark rights before serious damage has occurred").

The fourth factor, the relation in use and manner of marketing, provides some support for Primary Children's position because the products offered by both organizations appeal to a similar group of consumers at a similar time of the year— namely, the months leading up to Christmas.  While Scentsy points out that its product line is sold year-round, both nationally and internationally, there is a question of fact as to whether the manner of marketing of its "Festival of Trees" scent substantially overlaps the marketing of products for the Primary Children's event.

The fifth factor, the degree of care exercised by purchasers, is neutral.  Even if Primary Children's current and potential customers exercise a high degree of care, "the care with which consumers select a product does not impact the association they may make regarding the sponsorship of an event."  King of the Mountain Sports, 185 F.3d at 1092.  Primary Children's is concerned not just that consumers will mistakenly purchase a Scentsy "Festival of Trees" tin, but that consumers will mistakenly infer that Primary Children's has sponsored or approved Scentsy's products that bear this name.  As a result, evidence of purchaser care is of little importance.  See id. at 1090.

Finally, the court turns to the sixth factor, the strength or weakness of the marks.  Under Tenth Circuit precedent, courts evaluate two aspects of strength: (1) conceptual strength (the placement of the mark on the distinctiveness or fanciful-suggestive-descriptive spectrum); and (2) commercial strength (recognition by consumers in the marketplace).  Id. at 1093.  The court has discussed above that a reasonable jury could find that the mark is at least descriptive and that it is commercially strong.  As a result, this factor also weighs in favor of a finding that Scentsy's product is likely to confuse consumers.

These six factors do not indicate overwhelmingly that Primary Children's will be able to demonstrate a likelihood of confusion.  Indeed, this second prong of an unfair competition claim will often be difficult for a plaintiff to prove.  It is for this reason that the court is not persuaded by Scentsy's argument that a finding of nongenericness for the term "Festival of Trees" would result in an avalanche of litigation from other groups around the country that also use the term "Festival of Trees."  After all, fundraising tends to be local in nature and it is unlikely that consumers will confuse, say, the Syracuse Festival of Trees with the Primary Children's event. But Primary Children's may very well be able to show that consumers in Utah are likely to be misled by Scentsy's use of the term, since both organizations market to Utah residents.  While Primary Children's has not presented overwhelming evidence in its favor, it has amassed enough evidence to survive Scentsy's motion for summary judgment.

The court makes one final observation that is relevant to the analysis above.  The cases concerning generic terms that Scentsy cites in its motion (see, e.g., Boston Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d 1 (1st Cir. 2008) (discussing the term "duck tours"); Mil-Mar Shoe Co. v. Shonac Corp., 75 F.3d 1153 (7th Cir. 1996) (discussing the term "shoe warehouse");

Hunt Masters, Inc. v. Landry's Seafood Rest., Inc., 240 F.3d 251 (4th Cir. 2001) (discussing the term "crab house")) do provide some support for Scentsy's position that the court could find that "Festival of Trees" is a generic term. But not only does the court question the reasoning in these cases,[3] it also sees a fundamental distinction between these cases and Primary Children's claim of trademark infringement. The cases that Scentsy cites all concern competing businesses (namely, duck tour site-seeing groups, shoe warehouses, and crab restaurants). But Scentsy is not marketing its own "Festival of Trees" holiday fundraiser. And Primary Children's is certainly not worried that someone will mistakenly attend the wrong event. Instead, Primary Children's is concerned about sponsorship confusion and believes that consumers will wrongly assume that Scentsy's product line is associated with the Primary Children's fundraiser. As a result, this case is much more similar to cases involving recognizable local events, such as the Boston Marathon or the New York City Triathlon. See Boston Athletic Ass. v. Mark Sullivan, 867 F.2d 22 (1st Cir. 1989); New York City Triathlon, LLC v. NYC Triathlon Club, Inc., 704 F. Supp. 2d 305 (S.D.N.Y. 2010). In these cases, the courts do not focus on the protectability prong, besides finding that the events have established broad local recognition. Instead, the courts look to the likelihood of confusion analysis and consider the strength of the mark as one

---

[3]For instance, in the Boston Duck Tours case, the court agrees with the dissenting opinion that the majority "conflate[s] the first and second elements of the trademark infringement standard" by concluding that the term "duck tours" is generic even though only the second prong of the infringement analysis (the likelihood of confusion) is at issue. Boston Duck Tours, 531 F.3d at 31 (Declerico, J., dissenting). And while the majority holds that the term "duck tours" is generic, it also rules that the term "Boston Duck Tours" is "reasonably strong" and worthy of protection. Id. at 24. The court finds that it is not helpful to break a composite mark into its components in order to undertake an infringement analysis, and questions the precedential value of the holding that "duck tours" is a generic term.

factor among many.

The court agrees with this approach and finds that Primary Children's has presented enough evidence of broad local recognition to show that protectability is not the key issue here. Rather, Primary Children's case hinges on whether a likelihood of confusion exists between Scentsy's product and Primary Children's holiday event.  Because a reasonable jury could find that it does, Scentsy's motion for summary judgment is DENIED.[4]

Cancellation of the State Registration

Scentsy also argues that Primary Children's mark should be cancelled under Utah Code Ann. § 70-3a-307, which states that the Division of Corporations and Commercial Code shall cancel registration of a mark for which a court finds that "the mark is so similar, as to be likely to cause confusion, mistake, or to deceive to a mark registered by another person in the United States Patent and Trademark Office."  Scentsy provides evidence that the Judevine Center for Autistic Children has a federal registration of the term "Festival of Trees" in connection with a fundraising event in St. Louis.  (Gordon Aff., Exs. A-C, Dkt. No. 53-1.)  Because of this federal registration, Scentsy claims that Primary Children's state registration should be cancelled.  The court is not persuaded by this argument because Scentsy has failed to show that a Utah resident is likely to confuse the Judevine event with the Primary Children's event.  And Judevine's federal registration also cuts against Scentsy's argument that the term "Festival of Trees" is generic. While Judevine's registration does not cut off Primary Children's rights to the mark as a senior

_____

[4]Because Primary Children's state law claims all require a finding of trademark infringement or a likelihood of confusion, the court does not find it necessary to analyze these claims separately.

user, 15 U.S.C. §§ 1057(c), 1065, a federally registered mark is entitled to a presumption of protectability.  See, e.g., Yellow Cab Co. of Sacramento, 419 F.3d at 928.  As a result, it is unlikely that the term "Festival of Trees" was generic when Judevine registered its mark in 1989, and less likely that the term has become generic now.

**Motion for a Preliminary Injunction**

Primary Children's has filed a motion for a preliminary injunction because it argues that Scentsy's use of the term "Festival of Trees" will cause Primary Children's irreparable harm. For the reasons discussed below, the court does not believe that an injunction is warranted.

To obtain a preliminary injunction, Primary Children's must establish that (1) it will suffer irreparable injury unless the injunction issues; (2) the threatened injury to it outweighs whatever damage the proposed injunction may cause Scentsy; (3) its proposed injunction would not be adverse to the public interest if issued; and (4) it has a substantial likelihood of success on the merits of its claims.  See Schrier v. University of Colo., 427 F.3d 1253, 1258 (10th Cir. 2005).  "As a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." Id. (citation omitted).  Mandatory injunctions, injunctions that alter the status quo, and injunctions that afford the movant substantially all the relief she seeks are specifically disfavored and they "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." Id. at 1259 (quoting O Centro Espirita Beneficiente Uniao do Vegetal v. Ashcroft, 389 F.3d 973, 975 (10th Cir. 2004) (en banc)).

Primary Children's has moved for an injunction that would alter the status quo because Scentsy has already begun marketing and distributing its "Festival of Trees" tins.  Moreover, the

proposed injunction is mandatory in nature, since there is a real possibility that the court would have to supervise Scentsy's compliance with an order to change its marketing materials.  See id. at 1260 (injunctions that affirmatively require a party to act in a certain way and may require court supervision are mandatory).  Finally, the preliminary injunction would grant Primary Children's substantially all the relief it seeks, since Primary Children's main goal is to enjoin Scentsy from use of its mark.  Given that Primary Children's injunction is disfavored, it must "make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms."  O Centro, 389 F.3d at 976.

Primary Children's has not carried this burden.  As discussed above, Primary Children's must demonstrate that Scentsy's use of the term "Festival of Trees" is likely to confuse Utah consumers in order to succeed on its infringement claim.  And while Primary Children's has presented enough evidence to get to a jury on this issue, the court does not find that the evidence currently before it points overwhelmingly towards a ruling in Primary Children's favor.

The balance of harms factor also weighs against Primary Children's.  If the court were to issue a preliminary injunction against Scentsy's use of the mark, Scentsy would be forced to shelve up to $900,000 of retail that it has already produced. (Ritter Aff. ¶ 10, Dkt. No. 56.)  In contrast, Primary Children's has not demonstrated a strong showing that it will be harmed over the next few months.  Since it is not yet the holiday season, when the "Festival of Trees" marketing is at its strongest, the amount of fundraising income that might be diverted to Scentsy by its use of the mark or the possible damage to Primary Children's reputation is minimal.

While "[t]here are few things in our commercial life more valuable than a company's reputation, goodwill, and trademarks," By-Rite Distrib., Inc. v. Coca-Cola Co., 577 F. Supp. 530,

541 (D. Utah 1983), the harm that might occur to Primary Children's does not outweigh the harm that Scentsy would suffer if the court issued an injunction.  In addition, the uncertainty of success on the merits of Primary Children's claim and the disfavored nature of the requested injunction weigh against granting Primary Children's motion.

As a result, the motion for a preliminary injunction is DENIED.

## Motion to Strike

Scentsy has filed a Motion to Strike the Declaration of Sharon Goodrich (Dkt. No. 58). Scentsy argues that Ms. Goodrich's declaration contains inadmissible hearsay and statements that are not supported by adequate foundation.  But Primary Children's has filed the supporting declaration of Marie Patridge (Dkt. No. 76) to address the hearsay problem.  And the court has not relied on any of Ms. Goodrich's statements that are inadequately supported.  As a result, Scentsy's Motion to Strike is DENIED AS MOOT.

## ORDER

For the foregoing reasons, Primary Children's Motion for a Preliminary Injunction (Dkt. No. 6) and Scentsy's Motion for Summary Judgment (Dkt. No. 51) are both DENIED.  Scentsy's Motion to Strike the Declaration of Sharon Goodrich (Dkt. No. 58) is DENIED AS MOOT.

SO ORDERED this 20th day of June, 2012.

BY THE COURT:

_____
TENA CAMPBELL
United States District Judge

21